**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONALD SCAVONE,

    Plaintiff,

v.

PENNSYLVANIA STATE POLICE, COL.
JEFFREY B. MILLER, LINDA BONNEY
and FRANK E. PALOWSKI,

    Defendants.

CIVIL ACTION NO. 3:09-CV-1623

(JUDGE CAPUTO)

## MEMORANDUM

Before the Court is a motion for summary judgment brought by Defendants Pennsylvania State Police, Col. Jeffrey Miller, Linda Bonney, and Frank E. Palowski (collectively, "PSP"). (Doc. 30.)  Plaintiff Ronald Scavone alleges that PSP's decision not to hire him as a Liquor Enforcement Officer ("LEO"), after he failed to have a tattoo removed and questioned the removal policy, violated his First Amendment and Fourteenth Amendment rights.  PSP argues: (1) the First Amendment retaliation claim fails because there is no causal link between Mr. Scavone's speech and the decision not to hire him; and (2) a "class of one" equal protection claim cannot be brought in the public employment context.  The Court agrees with both of PSP's arguments and will grant PSP summary judgment.

## BACKGROUND

The PSP has been responsible for the enforcement responsibilities of the Liquor Control Board since the late 1980s and has developed the Bureau of Liquor Control Enforcement to carry out the Board's tasks.  An LEO primarily conducts undercover and open investigations at licensed establishments.  The PSP has had an unwritten tattoo policy

since 1984. In 2007, the PSP instituted a policy that anyone applying for the PSP with a visible tattoo would have to have it reviewed by the Tattoo and Replica Review Committee for the Bureau of Liquor Control Enforcement to determine the applicant's employment eligibility. In 2007, the committee was made up of Julie Farling, Major Lutz, and one or both of the Captains from the Bureau, including Captain Patrick Gephart. The Bureau's criterion for tattoos at that time was that they not: be inappropriate; demean the image or reputation of the PSP; or prevent undercover work. At the time, LEOs with tattoos were grandfathered in. In July 2008, the tattoo policy was amended so that new cadets were prohibited from having tattoos that were visible when wearing the standard State Police Trooper short-sleeved uniform. The PSP's tattoo policy is located in both the applicant's Acknowledgment of Responsibilities form and the PSP's website. If an applicant has an unacceptable tattoo, the PSP has a policy of making an offer of employment conditional on the removal of the tattoo – a policy developed by Linda Bonney and John Rick Brown.

Mr. Scavone originally tested with the PSP in 2007 and later interviewed for an LEO position. After passing the interview and written examination, on the day of his physical fitness exam Mr. Scavone had several of his tattoos photographed for evaluation. Of the ten tattoos photographed, one, a jester, was deemed unacceptable by the committee because of its uniqueness. By letter dated June 11, 2008, the PSP sent Mr. Scavone a letter stating his jester tattoo was unacceptable and had to be removed before he could be considered for employment. Mr. Scavone told the PSP he would remove the tattoo and spoke to two plastic surgeons. They told him the tattoo could not be completely removed and a "ghosting effect" would remain after surgery. After speaking to the surgeons, Mr. Scavone discussed the policy with individuals at the PSP and then hired an attorney to

investigate the policy. He was eventually administratively discharged for failing to have the tattoo removed. Mr. Scavone then brought suit, alleging violations of his First Amendment rights and Fourteenth Amendment equal protection rights. The PSP then brought a motion for summary judgment. The motion has been fully briefed and is ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of

3

an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.   First Amendment Retaliation Claim

The PSP is entitled to summary judgment on the First Amendment retaliation claim because the record provides no evidence of a causal link between Mr. Scavone's questioning of the tattoo policy and retaliatory action by the PSP.

To state a claim for actionable retaliation under the First Amendment, the plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v.*

4

*Independence Twp.*, 463 F.3d 285, 296 (3d Cir.2006). An "act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990).

Here, granting that Mr. Scavone's questioning the tattoo policy was constitutionally protected, the Court fails to find any allegations of a causal connection between that speech and PSP's denial of employment. The PSP informed Mr. Scavone in June 2008 that he would not be considered for employment as an LEO until his jester tattoo was removed. It was never removed. Further, Mr. Scavone did not begin to ask about the policy or seek a lawyer until several months *after* the PSP's determination was made. The Court fails to see how the PSP's decision to deny Mr. Scavone employment for questioning the tattoo policy could be conceptualized as retaliatory when the decision was made *before* he questioned it.

## II. Fourteenth Amendment Equal Protection Claim

The PSP is also entitled to summary judgment on Mr. Scavone's equal protection claim because "class-of-one" claims are prohibited in the public employment context.

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Two theories exist upon which a plaintiff may predicate an equal protection claim. *D'Atilio v. Dover Twp.*, 1:06-CV-1931, 2008 WL 3925833, *3 (M.D.Pa. Aug. 21, 2008). The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race or gender. *Id*. (internal citation omitted). To assert a protected class claim, the plaintiff must demonstrate that (1) he or she is a member

of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently. *Id*. (citing *Oliveira v. Twp. of Irvington*, 41 F.App'x 555, 559 (3d Cir. 2005)).  In contrast, under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class by alleging irrational and intentional differential treatment when compared with similarly situated individuals.  *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  To state an equal protection claim on a "class-of-one" theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006).

However, the United States Supreme Court has explicitly held that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 607 (2008).  The Court based this determination on the "common-sense realization that government offices could not function if every employment decision became a constitutional matter," *Id.* at 607, since:

> an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action—not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments—on the theory that other employees were not treated wrongfully.

*Id.* at 608.

Here, Mr. Scavone argues that he is not bringing an equal protection "class-of-one" claim but fails to allege the protected class, e.g. race or gender, of which he purports to be a member.  Additionally, he claims the "public employment" exception outlined in *Engquist* does not apply since he was never hired. The quotation cited immediately above, however,

makes it clear that *Engquist* extends to "hiring and firing decisions." Therefore, the Court will grant the PSP summary judgment on Mr. Scavone's equal protection claim as well.

### III.     Applicable Standard of Review

Finally, Mr. Scavone argues that the PSP's tattoo policy should be analyzed under the "strict scrutiny" standard of review rather than the usual "rational basis" standard. However, he fails to cite any case law for this position.

A classification under rational-basis review must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Heller v. Doe*, 509 U.S. 312, 320 (1993). On rational-basis review, a classification carries a presumption of validity, and those attacking the rationality of the classification "have the burden 'to negative every conceivable basis which might support it.' " *F.C.C. v. Beach Commc'n, Inc.*, 508 U.S. 307, 315 (1993) (internal citation omitted).

Here, the Court finds the tattoo policy rationally related to the PSP's legitimate interest in its image and reputation as well as the safety of its officers. Furthermore, LEOs do mostly undercover investigations. A tattoo makes them readily identifiable, inhibiting their ability to do their job.

### CONCLUSION

The Court will grant PSP's motion for summary judgment on Mr. Scavone's First Amendment retaliation and Fourteenth Amendment equal protection claims. Because the Court will grant the motion for the reasons stated above, it need not address PSP's qualified immunity arguments.

An appropriate order follows.

12/7/11                                                                /s/ A. Richard Caputo  
Date                                                              A. Richard Caputo  
                                                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONALD SCAVONE,

   Plaintiff,

       v.

PENNSYLVANIA STATE POLICE, COL.
JEFFREY B. MILLER, LINDA BONNEY
and FRANK E. PALOWSKI,

   Defendants.

CIVIL ACTION NO. 3:09-CV-1623

(JUDGE CAPUTO)

## ORDER

**NOW**, this    7th    day of December 2011, **IT IS HEREBY ORDERED** that the Motions for Summary Judgment brought by Defendants Pennsylvania State Police, Col. Jeffrey Miller, Linda Bonney, and Frank E. Palowski (Doc. 30) is **GRANTED**. The Clerk of Court is directed to mark the case as **CLOSED**.

                                                /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge